## AMERICAN DREAM, INC., PLAINTIFF-RESPONDENT, v. TOWNSHIP OF FRANKLIN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division
A–69–73

Argued October 8, 1974—Decided October 29, 1974.

Before Judges HALPERN, CRAHAY and ACKERMAN.

*Mr. Thomas J. Cafferty* argued the cause for appellant (*Messrs. Seiffert, Frisch & Gruber,* attorneys; *Mr. Robert M. Frisch,* on the brief).

*Mr. Leroy C. Gipson, Jr.* argued the cause for respondent.

PER CURIAM. Appellant municipality challenges a summary judgment entered on stipulated facts which ordered that it

\* \* \* remove the lien in the amount of $20,719.70 from certain real property within the township constituting a sanitary sewer assessment made under a local ordinance.

The narrow issue presented is whether plaintiff, as an optionee to purchase the involved premises, was entitled to an exemption from liability, as allowed by *N. J. S. A.* 54:5–18.5.[1] We are satisfied that there was no exemption and reverse. The essential factual and procedural history is that —

On January 27, 1972 plaintiff, American Dream, Inc. (American) executed a written option agreement with the owner of the involved premises — one Goldberger — to purchase approximately 31 acres of land, the option to endure until January 31, 1973. The consideration for the option was $16,344.96 and, if exercised, the purchase price was to be $250,000. Additionally, plaintiff assumed the responsibility to pay all municipal taxes and assessments.

On January 31, 1973 American and Goldberger extended the option for a period of six months for an added consideration of $5,625.24, that sum representing the aggregate of the monthly installments and real estate taxes for the period from February 1 to July 31, 1973. The purchase price of the property was increased from $250,000 to $260,000. Prior thereto, on December 26, 1972, plaintiff had been informed by the municipality that no assessments were then owing. This admittedly was in error since the township had in fact adopted an ordinance on March 25, 1971 imposing a sewer assessment against the property.

On March 9, 1973 plaintiff contingently contracted to sell its option to a third party — one Prel Holding Co. (Prel) — that contract providing that Prel pay plaintiff $100,000 and Goldberger $260,000. In April 1973 Goldberger advised

---

[1] "Any person who shall acquire for valuable consideration an *interest in lands* covered by any such certificate *in reliance thereon* shall hold such interest free from any subsequent liens of the municipality for any such municipal improvement which have been authorized by ordinance at the time such certificate was issued, but not assessed, and which are not shown in such certificate." (Emphasis supplied)

American that he had received a sewer assessment bill in the amount of $20,719.17.

Plaintiff's complaint sought a declaratory judgment of nonliability for the assessments, reciting basically that

(1) It had received, pursuant to its request, a search for municipal lien on December 26, 1972 indicating that there was no assessments or liens of record and that on March 9, 1973, based upon "all its cost factors," it entered into an agreement with Prel to sell its option.

(2) Having paid consideration for the option, that it was protected by *N. J. S. A.* 54:5-17. (This was later amended, without objection, to claim exemption under *N. J. S. A.* 54: 5-18.5).

(3) "To allow the continuation of said assessment and lien to remain upon this property would work both a substantial hardship and irreparable harm upon the said American Dream, Inc. *More particularly, the transaction between the said American Dream, Inc. and the Prel Holding Co. would be cancelled, wherein damages to the said American Dream, Inc. would be substantial.*" (Emphasis supplied)

The relief prayed for was the removal of the lien in the stated amount of $20,719.17.

Following argument on the motion for summary judgment, the trial judge granted plaintiff's claim for relief, rejecting the municipality's argument that the holder of an option for the purchase of land does not have such an interest in land to warrant the statutory exemption. The court distinguished *State v. New Jersey Zinc Co.,* 40 *N. J.* 560 (1963), holding that *Zinc* dealt with the issue of optionees' entitlement to participate in eminent domain proceedings. It went on to consider as factors in its holding that American had (1) expended monies to improve the property, (2) extended the original option agreement and (3) assumed certain contractual obligations by entering a contract to sell that option with Prel Holding Co. and that —

The financial considerations involved in the negotiation of the extension of the agreement as well as the sale of the option to Prel

were in part based upon the certification that the property was not subject to any assessment [and further that] the combination of these factors viewed in the light of the entire transaction renders plaintiff's interest in the land similar to that of a purchaser insofar as the application of the subject statute [*N. J. S. A.* 54:5–18.5] is concerned.

We are satisfied that plaintiff on this record is not entitled to the protection of the cited statute. There is no meaningful authority which holds other than that one who has an option to purchase real estate has no estate in the land but acquires merely inchoate rights therein which during the option period will be protected in equity. Those rights and interests in the property do not vest in an optionee until he has effectively made his election under the option. *River Dev. Corp. v. Liberty Corp.,* 45 *N. J. Super.* 445, 464 (Ch. Div. 1957), aff'd 51 *N. J. Super.* 447 (App. Div. 1958), aff'd 29 *N. J.* 239 (1959); *Bright v. Forest Hill Park Dev. Co.,* 133 *N. J. Eq.* 170, 183–184 (Ch. 1943).

Justice Hall, in *Zinc, supra,* treated of "the essential nature and effect of an option to purchase realty * * *." Albeit *Zinc* was a condemnation case, its author does not qualify, by way of the litigated context, when he instructs that

The owner is bound by his offer, but no obligation is imposed upon the optionee. *He has nothing but a continuing, irrevocable proposal to sell him the property, which will not ripen into anything more unless and until he exercises it, which he may do or not entirely as he pleases. An option does not create any interest in the land,* 3 *American Law of Property* §11.17 (1952), and in New Jersey, at least, the holder of an unexercised option is not entitled to share in the condemnation award (absent some contrary provision in the option agreement). * * * [40 *N. J.* at 576, emphasis added]

In enacting *N. J. S. A.* 54:5–18.5, did the Legislature intend otherwise? We are satisfied that it did not.

*Bright, supra,* decided in 1943, and *Chas. J. Smith Co., Inc. v. Anderson,* 84 *N. J. Eq.* 681 (Ch. 1915), both, like *Zinc,* holding that no estate in land passes under an option, were published decisional law prior to the enactment (1946) of *N. J. S. A.* 54:5–18.5. Since we deal here with

words of legal art we presume the Legislature's awareness thereof in its law-making process. *Commercial Trust Co. v. Hudson Cty. Tax Bd.*, 87 *N. J. L.* 179, 183 (E. & A. 1914); *River Development Corp., supra.*

Furthermore, we observe that *N. J. S. A.* 54:5–17, "Liens and Outstanding certificates of tax sale not shown by search; persons protected, immunizes only purchasers, lessees and mortgagees. Since *N. J. S. A.* 54:5–17 and 18.5 treat of the same essential subject matter, they should in the ascertainment of legislative intent be read *in pari materia. LoBoda v. Clark Tp.*, 40 *N. J.* 424 (1963). Thus, we see nothing warranting a judicial finding whereby optionees might be brought under the statutory umbrella. If the Legislature intended to enlarge the protected class, it would have said so. Simply, it did not. As emphasized above, American here, in claiming damages, did not rely on the assertion that it had a genuine interest in the involved property but rather did so as the contingent vendor of the option to purchase it.

The trial judge in his letter opinion cited as controlling *Polish National Alliance, Relator v. Perrapato,* 12 *N. J. Misc.* 163, 170 *A.* 225 (Sup. Ct. 1934). Respondent American urges that same authority to us. Reliance on it is misplaced, that case being clearly inapposite. There the exempted party was a "mortgagee in good faith" — an interest "real." Parenthetically, we observe that the judgment here under review unqualifiedly orders the lien removed, notwithstanding that the option had not been exercised. (At oral argument we were advised that such was still the case.) The force of the judgment, then, in the event of an ultimate failure of the option, would be to absolve the owner, Goldberger, and his predecessors in title of tax liability. Obviously Goldberger could not claim that such a windfall was legislatively contemplated.

Accordingly, the judgment under review is reversed.